UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINA M. VARLESI,                                   Case No. 10-14793

    Plaintiff,                         Denise Page Hood
v.                                                 United States District Judge

WAYNE STATE UNIVERSITY, *et al.*,                  Michael Hluchaniuk
                                                   United States Magistrate Judge

    Defendants.
_____/

**REPORT AND RECOMMENDATION
REGARDING PLAINTIFF'S MOTION FOR
<u>ATTORNEY FEES, COSTS, AND INTEREST (Dkt. 145)</u>**

<u>PROCEDURAL HISTORY</u>

The present complaint was initially filed on December 2, 2010.  (Dkt. 1).  A

judgment in favor of plaintiff against these defendants was entered on January 31,

2013.  (Dkt. 130).  On February 28, 2013, defendants filed a motion for a stay of

the judgment and a motion for judgment as a matter of law and for new trial. (Dkts.

141, 144).  Plaintiff filed her motion for attorney fees, costs, and interest on the

same day, seeking attorney fees in the amount of $426,657.50,  costs in the amount

of $16,180.56[1] (less $9,350.10 already awarded for a net of $6,830.46), and a 10%

enhancement based on the contingent nature of the case. (Dkt. 145, Pg ID 5937-

_____

[1]Of this amount, $15,203.32 were costs incurred by counsel and $977.24
were costs incurred by plaintiff directly. (Dkt. 145, Pg ID 5974-75, 5978).

1

38). District Judge Denise Page Hood referred the motion for attorney fees and costs to the undersigned on March 6, 2013. (Dkt. 149). Defendants filed a response to the motion for attorney fees and costs on March 14, 2013. (Dkt. 150). A reply was filed by plaintiff on March 25, 2013. (Dkt. 156). The parties filed a statement of resolved and unresolved issues on May 16, 2013. (Dkt. 158). A hearing on the motion was held, via conference call, on May 23, 2013. Defendants' post-trial motions are still pending as of this date.

<u>TIMING OF MOTION</u>

Defendants object to the timing of this motion, arguing that the resolution of the motion should be delayed pending the decision on post-judgment motions that defendants have filed. Defendants contend, with some merit, that the interests of "judicial economy" will be served by delaying a decision on the motion for attorney fees until the post-judgment motions have been decided and other matters, including a possible appeal, have been resolved which could change the factors that might be considered regarding the attorney fees motion. (Dkt. 150, Pg ID 6176).

Plaintiff argues that the motion for attorney fees was timely filed and cites to authority for the proposition that it is sometimes advisable to decide the attorney fee question before an appeal so that any challenges to that decision can be addressed at the time of an appeal on the merits. (Dkt. 156, Pg ID 6355).

2

The present motion has been briefed and argued at this point.  While it is entirely possible Judge Hood could make a decision on defendants' post-trial motions that would alter the analysis of the attorney fees motion, the chance of that happening is not so likely as to make this judicial effort seem like a waste of time. The undersigned also notes that Judge Hood referred the present motion to the undersigned after the defendants' post-trial motions were filed and one could infer that she intended on having the motion for attorney fees decided independently of the post-trial motions.[2]   No persuasive argument has been made that the ruling on this motion should be deferred.

<u>HOURLY RATE OF PLAINTIFF'S ATTORNEYS</u>

"The starting point for determining a reasonable fee is the lodestar, which is the product of the number of hours billed and a reasonable hourly rate." *Gonter v Hunt Valve Co. Inc.*, 510 F.3d 610, 616 (6th Cir. 2007).  Regarding the issue of attorney fees, "the primary concern is that the fee award be 'reasonable.'" *Id.*  "A reasonable fee is '*adequately compensatory to attract competent counsel yet which*

---

[2]When the case against the Salvation Army defendants was dismissed by summary judgement, the Salvation Army defendants filed a motion for attorney fees on March 2, 2012.  (Dkt. 96).  That motion was not referred to the undersigned until August 3, 2012 (Dkt. 110), which was the same day as the motion for reconsideration of the summary judgment ruling was denied. (Dkt. 109).  Given the difference in the scheduling of the present motion for attorney fees, the inference that this motion should be decided without regard to the ruling on the post-judgment motions is stronger.

*avoids producing a windfall for lawyers.'"  Id.* (Emphasis in original).  Stated another way, "a reasonable hourly rate should be sufficient to encourage competent lawyers in the relevant community to undertake legal representation."  *Lamar Advertising Co. v Charter Township of Van Buren*, 178 Fed.Appx. 498, 501-02 (6th Cir. 2006).

The motion proposes an hourly rate for plaintiff's lead counsel, Deborah Gordon, of $450.00 per hour.  Plaintiff supports that request with a copy of her *curriculum vitae,* an affidavit of another experienced attorney, copies of prior orders for attorney fees in cases she was involved with, and a copy of an affidavit from counsel for the Salvation Army in this matter who had earlier sought an award of attorney fees.  Defendants object to that hourly rate contending that it is unreasonable.  (Dkt. 150, Pg ID 6179).  Defendants appear to be critical of the idea of looking at the hourly rates set by other judges in prior cases that Ms. Gordon was involved in, but then refer to the findings of another judge regarding attorney fees, in a case not involving Ms. Gordon, in support of their argument.  Defendants do not suggest a specific hourly rate that, in their view, would be "reasonable" for Ms. Gordon in this case.

Ms. Gordon's *CV* indicates she has been practicing law for approximately 37 years, that her experience is almost exclusively in the civil rights and employment area, that she has spoken and written on these topics on numerous

occasions and that she is a very accomplished attorney in this area of the law. Defendants do not challenge the claim that plaintiff's counsel, Ms. Gordon, is highly qualified, but assert that $450.00 per hour is unreasonable given the standards for awarding attorney fees. Defendants point out that according to the most recent State Bar of Michigan survey, $450.00 per hour is the 95th percentile for lawyers in the civil rights field of practice. That rate is also just about at the 95th percentile for lawyers, like Ms. Gordon, with over 35 years of practice.

Based on Ms. Gordon's experience and level of accomplishments, she might very well be able to command a rate of $450.00 per hour in the open market of legal services. However, the test for awarding fees is not primarily the worth of the attorney performing the services. The standard is a rate that is sufficient to encourage competent attorneys in the relevant community to undertake the representation of similarly-situated plaintiffs. The 75the percentile rate for civil rights attorneys, as indicated in the State Bar survey, is $325.00 per hour. For attorneys with over 35 years of experience the 75th percentile is $315.00 per hour. The relevant "community" is viewed as Downtown Detroit because that is where the trial took place. *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 277-78 (6th Cir. 1983) (no abuse of discretion to base hourly rate calculation on those customarily charged in jurisdiction where case is tried as opposed to where attorney's office is located). The 75th percentile for Downtown

Detroit is $375.00 per hour.

Plaintiff also refers to three other federal court cases in this district awarding fees to Ms. Gordon with the most recent (2009) awarding an hourly rate of $400.00 per hour. (Dkt. 145-10, Pg ID 6002).  Defendants refer to a case from this district where fees were awarded and experienced attorneys were awarded an hourly rate of $350.00 per hour.  Considering all of these factors the undersigned concludes that $400.00 per hour is a reasonable attorney fee for the hours submitted by Ms. Gordon.

Defendants also contend that an hourly rate of $350.00 an hour for Ms. Laughbaum is unreasonable.  As with Ms. Gordon, defendants do not submit what they believe is a reasonable hourly rate for Ms. Laughbaum, but they do refer to a federal case from 2008 where Ms. Laughbaum was awarded $200.00 per hour. (Dkt. 150-6, Pg ID 6220).  Plaintiff asserts that Ms. Laughbaum has been practicing law for approximately 24 years and has 20 or more years of practice in the employment law area. (Dkt. 145, Pg ID 5930).  Plaintiff also attaches a decision in an arbitration matter awarding Ms. Laughbaum $300.00 an hour in that case.  (Dkt. 145-11, Pg ID 6006).[3]  According to the latest State Bar survey, the 75th percentile rate for attorneys with 24 years of practice is $300.00 per hour and

_____

[3]The undersigned views non-federal court cases as being of limited relevance to this analysis because they may be applying a different standard to the award of attorney fees than applies in cases such as the present one.

the 75th percentile rate for attorneys practicing employment law for plaintiffs is $300.00 per hour. Based on the above, the undersigned believes that $325.00 an hour is an hourly rate sufficient to encourage attorneys of comparable skill and experience to that of Ms. Laughbaum to represent similarly-situated plaintiffs in such matters.

Defendants do not object to any of the hourly rates submitted by the other attorneys and paralegals who had represented plaintiff in this matter and those rates are therefore deemed reasonable.

As a component of the defendants' challenge to the reasonableness of the attorney fee petition, defendants argue that 96% of the hours of legal services were billed by the partners in the law firm, Ms. Gordon and Ms. Laughbaum, rather than associates who could perhaps have billed for some of those services at a lower rate. In *Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir. 1983), the court stated that courts should not "approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates. Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates." *Id*. at 677. However, not all law firms are "large firms" and delegation of work to less experienced associates is not always possible. In those circumstances there should not be a reduction in the fee request because a senior member of the firm has performed the services. *Communities for Equity v.*

7

*Michigan High Sch. Athletic Ass'n*, 2008 WL 906031, *13 (W.D. Mich. 2008).

*See also Roberts v. Nat'l Bank of Detroit*, 556 F.Supp. 724, 728 n.1 (E.D. Mich. 1983). While plaintiff's counsel's law firm may not be a "large" firm, there are some associates working for the firm as indicated by the billing records in this case and it is reasonable to conclude that some of the work done by Ms. Gordon and Ms. Laughbaum could have reasonably been delegated to these associates and in fact some of it was. The undersigned finds that an across-the-board reduction in the hours expended by Ms. Gordon and Ms. Laughbaum in the amount of 2% adequately reflects the adjustment for work that was unnecessarily completed by a senior member of the firm rather than an associate.

## ATTORNEY FEES PAID TO PRIOR ATTORNEYS

Plaintiff seeks reimbursement for fees paid to prior attorneys she had retained in related matters. She is also seeking reimbursement for expenses that she personally paid independently of costs that were incurred by her attorneys in the course of the litigation. (Dkt. 145-5, Pg ID 5977-83). Regarding the attorney fees, plaintiff seeks $2745.14 for fees and costs paid to attorney Jeffrey Hart for legal services provided in connection with her attempts to be reinstated following her dismissal by defendants. Defendants object to this request based on the contention that a fee award under § 1988 is limited to attorney fees "reasonably expended on the litigation." *Webb v Bd. Of Educ. of Dyer Cnty. Tenn.*, 471 U.S.

234, 242 (1985).

Plaintiff argues that *Webb* does not absolutely rule out an award of attorney fees and that the decision is left to the discretion of the court.  (Dkt. 156, Pg ID 6357).  While *Webb* may not completely rule out the possibility of an award of attorney fees similar to those requested by plaintiff, the principles outlined in *Webb* clearly indicate that such fees are not included in a § 1988 award.  There the plaintiff had sought reinstatement of his position from the school board that had terminated it.  The efforts were unsuccessful and the litigation followed.  The court clearly said the compensable fees had to be "'expended on the litigation'" and denied an award of fees relating to the administrative attempts to have the plaintiff's job reinstated.  *Webb*, 471 U.S. at 242.  The court did hold open the possibility that "work product from the administrative proceedings [that] was work that was both useful and of a type ordinarily necessary to advance the [subsequent] civil rights litigation" might be compensated but that the plaintiff had not made such a showing. *Id.*  The present circumstances here are very similar in that the request for fees regarding attorney Hart relate to an attempt to administratively be reinstated and no showing has been made that those efforts were "useful" and "ordinarily necessary to advance the ... litigation."

The Sixth Circuit recently confirmed a narrow view of *Webb* regarding an award of attorney fees.  In *Binta B. v Gordon*, 710 F.3d 608, 630 (6th Cir. 2013),

the court declined to award attorney fees for work done in separate, but related litigation where materials obtained in the separate litigation were used in the pending litigation.  The court ruled that the "more primary requirements recognized in *Webb* [are] that § 1988 authorizes fees only for time spent reasonably expended *on the litigation* - in other words, time spent *in this case.*" *Id.*

The services provided by attorney Hart relating to plaintiff's attempt to be reinstated are outside the scope of what is normally compensable under § 1988. The services provided by attorney Roumell are identified as "consultation" although it is not clear from the billing records what the "consultation" relates to. Plaintiff has the burden to demonstrate that legal services were "reasonably expended in the prosecution of the litigation" and the present record does not satisfy that burden.  *Imwalle v Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008).  As noted by defendants, the requirements of LR 54.1.2(b) including the need for an affidavit from the attorney providing the legal services, have not been met in this case and that also serves as a basis for denying this request.

<u>DETAIL OF BILLING RECORDS</u>

Defendants have objected to plaintiff's billing records, contending that they are, in part, impermissibly vague and payment should not be made based on such records.  Defendants argue that entries with no description of the services performed and entries such as "prep only," "review deps," "review pleadings," are

too vague to allow counsel and the court to determine if they are reasonable. Defendants also make a specific objection to an entry for 2.5 hours on February 1, 2013, for "meeting with client" the day after the verdict was returned in the trial. (Dkt. 150, Pg ID 6182-83).

Plaintiff responded to the objections by updating the billing records to include a description of the services performed where there had been none and by asserting that the records were sufficiently detailed to allow the court to determine their reasonableness.  (Dkt. 156, Pg ID 6357).

"The documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation."  *United Slate v. G&M Roofing*, 732 F.2d 495, 502 n.2 (6th Cir. 1984).  While "counsel need not 'record in great detail' each minute he or she spent on an item . . . 'the general subject matter should be identified' [and the billing entries have to be] read in the context of the billing statement as a whole and in conjunction with the timeline of the litigation."  *Imwalle v. Reliance Med. Products*, 515 F.3d 531, 553-54 (6th Cir. 2008).  "Attorneys who seek fees have an obligation 'to maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended' on the case." *Id*. at 552.

Specific examples of deficient billing entries can be found in two cases decided in this district.  In *Gratz v. Bollinger*, 353 F.Supp.2d 929, 939 (E.D. Mich. 2005), entries such as "office conference," "research," and "review article" were deemed inadequate.  Similarly, in *Bell v. Prefix*, 784 F.Supp.2d 778, 787 (E.D. Mich. 2011), significant blocks of time identified only as "trial preparation" were "problems" for an attorney fee petition.

Recognizing that the court does have discretion in this area, the undersigned concludes that billing entries identified as "prep only" do not measure up to the "detail and probative value" standard applicable to these matters.  Between March 24, 2012, and January 27, 2013, the billing records for Ms. Gordon reflect 130.5 hours for "prep only."  Most of those entries are closely related to the trial in this matter but some are not.  The undersigned is aware of the effort that is involved in conducting a trial of a complicated matter and the need for adequate preparation, but an entry of "prep only" simply does not include sufficient information as to the legal services actually provided to allow for an informed judgment as to the reasonableness of the time spent.  Ms. Gordon's billing records have a generic description of what is commonly included in the meaning of "trial and preparation" entries in her billing statements and that description includes the type of legal services one would expect to provide in those circumstances.  However, such a general description does not cure the inadequacy relating to the services provided

at a certain time, for a certain period.    The undersigned concludes that a 10% reduction in the "prep only" hours is an appropriate remedy for the lack of detail associated with those entries.  While many of the other entries are not substantially clearer and more detailed than the "prep only" entries, the others are viewed as adequate when viewed "in the context of the billing statement as a whole and in conjunction with the timeline of the litigation."  *See Imwalle*, 515 F.3d at 553-54.

Defendants' specific challenge to the 2.5 hours that Ms. Gordon spent meeting with plaintiff the day after the verdict went unexplained by plaintiff in her reply.  While some consultation between counsel and the plaintiff would be reasonable following the verdict in a case such as this one, it is hard to imagine why it would take 2.5 hours to address the relevant issues.  One hour would seem like a reasonable time period within which to discuss the post-trial issues relevant to the case and that is all that will be allowed.

<u>ATTORNEY FEES FOR CLAIMS THAT WERE LOST</u>

Plaintiff seeks an award of attorney fees and costs for all the time reasonably expended on this litigation, including fees for claims that were "lost."  Defendants object to awarding plaintiff fees for time spent on claims on which plaintiff did not prevail, asserting that plaintiff did not prevail on marital status discrimination claims under Title IX and state law, sexual harassment claims under Title IX, due process claims, claims against the Salvation Army and its employee Joyce

Stefanski, as well as claims against three Wayne State University employees. (Dkt. 150, Pg ID 6183).

In *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983), the Supreme Court addressed the issue regarding an award of attorney fees where the plaintiff was not successful on all the claims:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants - often an institution and its officers, as in this case - counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." ... The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim. ... In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

The Sixth Circuit has followed the guidance of *Hensley* with respect to attorney fee petitions where not all of a plaintiff's claims are successful. In

*Imwalle,* the court acknowledged the repeated rejection of "mechanical reductions" in attorney fee awards based on the number of issues plaintiff has prevailed on. *Id.* 515 F.3d at 554. "'[T]he court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing the [attorney] fee' ... '[w]hen claims are based on a common core of facts or are based on related legal theories.'" *Id.*

The undersigned finds that all of plaintiff's initial claims in this case arose from a "common core of facts" and the legal theories advanced by plaintiff were "related." As a result, there should be no reduction in the fee award because plaintiff was not successful on all of her initial claims. Plaintiff states that all of the time relating exclusively to the claims against The Salvation Army have been removed from the billing statements so those claims are not really at issue.[4]

<u>COSTS</u>

Plaintiff seeks costs in the total amount of $15,203.32 (incurred by counsel) plus $977.24 (incurred directly by plaintiff). Plaintiff acknowledges that $9,305.10 were already taxed by the Clerk and that amount should be subtracted from the amount presently sought.

---

[4]Defendants disagree with the assertion that all the hours associated with the claims against The Salvation Army have been removed from the billing statements by pointing out that time associated with the deposition of Joyce Stefanski are still included. However, Ms. Stefanski would have been a material witness in this case regardless of whether she or The Salvation Army would have been a defendant in the case and the time related to her deposition is properly included here.

Defendants do not object to plaintiff's entitlement to an award of costs but argue that some of the costs plaintiff seeks reimbursement for are unreasonable. Specifically, defendants argue that claims for copying that do not include an explanation of what was copied are not reasonable and that the costs of computer research should not be reimbursed because it is part of an attorney's overhead. In a footnote, defendants also object to reimbursement for the $750.00 cost of attempting to retrieve emails sent to WSU from plaintiff's computer. (Dkt. 150, Pg ID 6186-87, n. 8). Plaintiff contends that such costs should be reimbursed because they are routinely billed to clients as are copying expenses. (Dkt. 156, Pg ID 6359).

Plaintiff's list of costs she seeks reimbursement for includes a total of $3,468.20 in copying expenses. (Dkt. 145-4, Pg ID 5974-75). A few of the entries identify the specific items copied but the majority appear to cover a period of time and aggregate the copying charges accumulated over that time. Defendants do not object to the notion of being reimbursed for copying expenses but contend that plaintiff has not provided an explanation for what was copied and how those copies were used in conjunction to the litigation. (Dkt. 150, Pg ID 6186-87). Defendants cite *Zapata Gulf Marine Corp. v. Puerto Rico Maritime Shipping Authority*, 133 F.R.D. 481, 484 (E.D. La. 1990) in support of their position. *Zapata* did involve a ruling from the court denying a request for reimbursement of $96,345.00 in copying expenses where there was no explanation about what was copied and how

16

it was used. *Id.*

This circuit has long recognized that copying, or duplicating, expenses are recoverable by the prevailing party pursuant to § 1988. *Northcross v. Bd. of Educ. of Memphis City Schs.*, 611 F.2d 624, 642 (6th Cir. 1979). The court also stated that a level of deference would be given to counsel for the prevailing party when determining what number of copies was reasonable. *Id.* (the court will not "second-guess" an attorney's decision on how many copies are necessary). Plaintiff cites to *Citizens Insurance Co. v. Graceland Fruit*, 2007 WL 2902213 (W.D. Mich 2007) in support of her position. There, the judge considered an application for an award of costs that included $6,422.54 in copying expenses with "ambiguous" explanations for their purpose. Considering that the costs were identified as "photocopies" and seemed reasonable in amount, the court viewed them with "some deference" and reduced the award by a 25% factor. *Id.* *9.

As a practical matter, it would be difficult to document what every photocopy made in the course of pursuing a lawsuit of this nature was used for. That is not to say it would be impossible to do that when a large number of copies are made for a relatively discrete purpose. For example, on May 4, 2011, plaintiff identified 5,050 copies having been made over the prior two months and on January 23, 2013, plaintiff identified 6,160 copies having been made over a little more than a month. It is reasonable to assume that in those time periods some

17

specific purpose for making a significant number of copies could have been documented.  However, like the judge in *Citizens*, the undersigned finds that the overall amount of photocopying in this case (litigation that took over two years) was reasonable and that "some deference" should be given to counsel. Recognizing that documentation was lacking to some degree in this case as to the purpose for the copies, a 10% reduction in the amount requested will be made.

Plaintiff also seeks an award for computerized legal research in the amount of $757.50.  (Dkt. 145-4, Pg ID 5975-76).  Defendants claim that such fees should be disallowed completely. (Dkt. 150, Pg ID 6187). Costs and expenses that an attorney generally charges to a client are recoverable under § 1988.  *Northcross v. Bd. of Educ.*, 611 F.2d 624, 638-39 (6th Cir. 1980).  While the Sixth Circuit has not specifically addressed the issue of whether computer legal research, such as WESTLAW, is recoverable, a number of other courts have done so.  Defendants cite the case of *In re Rio Hair Naturalizer*, 1996 WL 780512 (E.D. Mich. 1996) in support of their position.  The district judge in *Rio* clearly states that "computerized legal research ...[is] considered by most courts as an 'overhead' component of attorneys' fees, and not separately compensable as costs." *Id. *19. A different result was reached by a court in Ohio.  In *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F.Supp 1017, 1023-24 (N.D. Ohio 1997), the judge awarded the costs of computerized legal research under § 1988, citing a number of

cases for the propriety of such an award.  A similar decision was reached, without analysis, in *Gratz*, *supra*, at 945 (computerized research costs awarded but reduction made based on costs being "exorbitant").  In *Project Vote v. Blackwell*, 2009 WL 917737 (N.D. Ohio 2009), the judge noted there was a difference of opinion reflected in reported decisions on awarding the costs of computerized research, but stated the "weight of recent authority favors treating computerized legal research as a recoverable expense" and awarded such costs.  *Id*. at *19.  The same result was reached in *Citizens Ins. Co. of Am. v. KIC Chemicals, Inc.*, 2007 WL 2902213, at *7(W.D. Mich. 2007) ("research aides like Westlaw are necessary and proper in the studied practice of law").

The undersigned believes those judges who have awarded the costs of computerized research are in the majority and the reasons for doing so are well founded.  Plaintiff is awarded costs for computerized research in the amount of $757.50.  These costs are certainly reasonable given the length and complexity of the litigation.

Defendants also object to plaintiff's request for reimbursement for the cost of attempting to recover emails to WSU, which was a $750.00 cost that plaintiff incurred directly.  Defendants' objection is that no explanation has been provided for this expense and plaintiff has not linked this to a discovery request made by defendants.  (Dkt. 150, Pg ID 6186).  The undersigned believes that the need for

this information in this litigation is obvious and needs no explanation.  Locating

emails between the plaintiff and the defendants would be potentially very

important in the litigation and this is the case whether the information was sought

to prosecute the case or to provide to defendants as part of discovery.  The costs for

this purpose will be awarded to plaintiff.

ENHANCEMENT

Plaintiff seeks a 10% enhancement in the attorney fee award based on the

argument that such an enhancement is warranted due to the fact that plaintiff's

counsel was willing to take the case on a contingency basis which has a risk of

non-payment if the case is not successful.  (Dkt. 145, Pg ID 5937-38).  Defendants

object to the request for an enhancement, contending that enhancements should be

rarely given, that plaintiff has not justified an enhancement in these circumstances,

and that "the risk of a contingency agreement is not applicable to fee

enhancements."  (Dkt. 150, Pg ID 6187-88).

While there may be several factors that could be considered in deciding if an

attorney fee award should be enhanced, plaintiff relies only on the fact that the case

was initially taken by plaintiff's counsel on a contingency fee basis.  One of the

cases plaintiff cites in support her request is *Palmer v. Shultz*, 679 F.Supp. 68

(D.D.C. 1988).  In awarding an enhancement in that case based on the contingent

nature of the agreement with plaintiff's counsel, the court noted the clear showing

20

that plaintiff would have had "substantial difficulties" in obtaining counsel in Washington, D.C. without the incentive that a fee enhancement would create. *Id*. at 74.  No showing of that kind has been made here.  A second case cited by plaintiff is *Conklin v Lovely*, 834 F.2d 543 (6th Cir. 1987).  There, the court noted that is was possible to enhance an attorney fee award based on the contingent nature of the fee, but that the district judge had not made adequate findings of fact to support such a decision and the case was remanded to the district court for additional findings.  In the course of the ruling, the court noted that the findings would have to demonstrate that the enhancements "were necessary to attract competent counsel in the relevant community" and that it was improper to base the enhancement on factors that were already included in the lodestar analysis such as  "risks unique to the case [as well as] new and novel issues raised by the case, and the stubbornness of the defendants."  *Id*. at 553, quoting from *Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 483 U.S. 711, 734 (1987).

Defendants cite to *City of Burlington v. Dague*, 505 U.S. 557 (1992), for the proposition that contingency fee agreements should never result in an enhancement.  In *Dague* the court said:

> Contingency enhancement is a feature inherent in the contingent-fee model (since attorneys factor in the particular risks of a case in negotiating their fee and in deciding whether to accept the case).  To engraft this feature onto the lodestar model would be to concoct a hybrid scheme that resorts to the contingent-fee model to increase a fee award but not to reduce it. Contingency enhancement is therefore

> not consistent with our general rejection of the contingent-fee model
> for fee awards, nor is it necessary to the determination of a reasonable
> fee. ... Contingency enhancement would make the setting of fees more
> complex and arbitrary, hence more unpredictable, and hence more
> litigable. ... [W]e hold that enhancement for contingency is not
> permitted under the fee-shifting statutes at issue.

*Id.* at 566-67.  That case involved claims under the Solid Waste Disposal Act, 42

U.S.C. § 6972(e) and the Clean Water Act, 33 U.S.C. § 1365(d).  While the *Dague*

court appeared to say that those specific statutes did not permit an enhancement for

contingency, the court subsequently clarified that the decision regarding

enhancement based on contingency was broader than that.  In *Perdue v. Kenny A.*,

559 U.S. 542, 130 S. Ct. 1662, 1676 (2010) the court reversed a lower court award

of attorney fees under § 1988 for several reasons, including the fact that the lower

court relied on the "contingency of the outcome" which contravened the Court's

holding in *Dague*.

  *Dague* is premised, in part, on the court's desire to not turn an attorney fee

petition into a "second major litigation." *Dague*, 505 U.S. at 566, quoting from

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  *Dague*, when read in conjunction

with *Perdue*, indicates that an enhancement based on contingency is not permitted

and therefore plaintiff's request for an enhancement based on contingency is

denied.

<u>INTEREST</u>

  Plaintiff seeks pre- and post-judgment interest on the judgment amount as

well as on attorney fees and costs.  (Dkt. 145, Pg ID 5938-39).  Defendants have not objected to this request and therefore plaintiff is awarded pre-judgment interest under state law and post-judgment interest under state and federal law based on the authority plaintiff cites in her brief.

SUMMARY

Ms. Gordon's hourly total of 570.30 hours will be reduced by 13.05 hours for the vagueness of the "prep only" entries on the time sheets and by an additional 1.5 hours for the excessive time for meeting with the plaintiff following the verdict.  This results in a reduced total of 555.75 hours.  This amount is further reduced by 2% for the failure to delegate work to associates which comes out to 544.64 hours.  Multiplying that hourly total by the $400.00 per hour rate yields a total of $217,856.00.

Ms. Laughbaum's hourly total of 543.55 hours will be reduced by 2% for the failure to delegate work to associates which comes out to 532.68 hours.  Multiplying that hourly total by the $325.00 per hour rate yields a total of $173,121.00.

The other attorney fees requested in this case were not objected to and will be approved.  The new approved totals are as follows:

| | |
|---|---|
| Gordon | $217,856.00 |
| Laughbaum | 173,121.00 |
| Dolente | 7,695.00 |
| Penna | 500.00 |

23

| | |
|---|---|
| Giffen | 1,400.00 |
| Hudson | 1,740.00 |
| Stottlemyer | 2,332.50 |
| Awdish | 112.50 |
| | |
| Total | $404,757.00 |

Plaintiff's request for $3,468.20 in copying costs will be reduced by $346.80 as a result of inadequate documentation.  This is the only reduction determined to be appropriate based on defendants' objections. An additional award of costs (beyond that already taxed by the clerk) in the amount of $6,483.64 is approved. Pre- and post-judgment interest is approved and will be calculated by plaintiff and submitted to defendants.

<u>RECOMMENDATION</u>

It is Recommended that attorney fees, costs, and interest, as indicated above, be awarded to plaintiff.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 14, 2013                       s/Michael Hluchaniuk
                                            Michael Hluchaniuk
                                            United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>August 14, 2013</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Deborah L. Gordon, Megan P. Norris, Muhammad Misbah Shahid, Heather G. Ptasznik, John T. Below, Lauren M. Phillips, and Patrick F. Hickey</u>.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
