NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 16a0130n.06

Case No. 14-1862

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 07, 2016
DEBORAH S. HUNT, Clerk

TINA VARLESI, )
)
    *Plaintiff-Appellee*, )
)
    v. ) ON APPEAL FROM THE
) UNITED STATES DISTRICT
) COURT FOR THE EASTERN
WAYNE STATE UNIVERSITY, *et al.*, ) DISTRICT OF MICHIGAN
)
    *Defendants-Appellants*. )
)

Before: BATCHELDER, McKEAGUE, and STRANCH, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** Tina Varlesi was a graduate student in the School of Social Work at Wayne State University (WSU). After receiving a failing grade and being denied a degree from the social work program, she brought suit in federal court, against WSU, her faculty advisor, Carol Premo, the WSU Director of Field Education, Anwar Najor-Durack, and the Dean of the WSU School of Social Work, Phyllis Vroom, claiming, among other things, pregnancy discrimination in violation of Title IX and Michigan's Elliott-Larson Civil Rights Act (ELCRA), and retaliation for her complaining about that discrimination.[1] A jury found the defendants liable, and awarded Varlesi $848,690 in damages. The defendants appeal the judgment and the denial of certain motions. We AFFIRM.

**I.**

In 2006, Tina Varlesi graduated from college with excellent grades, a degree in psychology, and aspirations of being a social worker. That fall, she enrolled at WSU to obtain an M.S. in Social Work, which is a two-year, graduate program with both classroom coursework

and hands-on "field" work doing actual social work at an agency under the tutelage of a (purportedly) licensed, qualified social worker. She was not an employee, nor was she even a volunteer or an intern; she was a student paying WSU for this experience via tuition and fees.

Varlesi's first year performance was outstanding: excellent grades in her classes and a "satisfactory" (the highest possible grade) in both of her field placements. Apparently, one agency even offered her a job, to commence after she obtained her degree. But during the intervening summer, Varlesi became pregnant, although she was not married, and during her placement in the fall semester of her second year, the trouble started (though her classroom grades remained excellent).

That fall semester, beginning September 2007, Varlesi's "faculty advisor," Carol Premo, placed her at the Veteran's Administration (VA) Hospital under a "field instructor" named Pamela Mackey, a placement that was problematic from the beginning, even before Varlesi discovered her pregnancy (circa September 24, 2007).[2] Varlesi did not like the placement at the VA and Mackey did not like Varlesi, complaining extensively to Premo and ultimately terminating the placement early. When Varlesi accused Mackey of pregnancy discrimination, Premo summarily rejected the accusation and did not investigate. But, despite Mackey's scathing report, Premo did not fail Varlesi from that placement. Instead, Premo passed Varlesi and placed her at the Salvation Army Adult Rehabilitation Center (an all-male rehabilitation center for ex-convicts, drug addicts, etc.) for the spring semester, under a field instructor named

---

[1] Other defendants named in this action obtained summary judgment. Those judgments are not appealed.

[2] According to the WSU "School of Social Work Field Education Manual," a "faculty advisor" and a "field instructor" each has specific, defined authority, roles, and responsibilities:

The <u>faculty advisor</u> "provides assistance and feedback to the student at the [field placement] agency and mediates placement related issues, including any that might occur between the student and the field instructor," but more importantly, "monitors and grades the student's field work performance." R. 56-3 at 11 (Manual), Pg ID# 1284.

Correspondingly: "A <u>field instructor</u> is a Licensed Masters Social Worker (LMSW) with 2 years post-MSW experience and [an] agency staff member who supervises students at the field placement agency. The field instructor also evaluates students and provides feedback to the faculty advisor for grading." *Id*.

Joyce Stefanski, with the expectation that Varlesi would also make up the incomplete hours from the fall semester.

Varlesi began the spring semester, her final semester in the program, on January 7, 2008, at the Salvation Army placement and Stefanski addressed her obvious pregnancy immediately, ordering her not to drive after dark or in bad weather, questioning her marital status and living arrangements, and announcing that though she had "had relations" with someone, the men at the rehab "can look but they cannot touch." Other students were present for this uncomfortable conversation. And, within days, Sefanski was complaining to Premo about Varlesi's alleged underperformance, poor attendance, and bad attitude. There was also a separate problem. On January 11, 2008, another student, Amber Bergin (one of three other students Premo had placed at the Salvation Army), sent a mass email critical of the placement experience and of Stefanski personally, pointing out, among other things, that Stefanski was not a licensed social worker, or even actually a social worker, as was required by the Manual. The email infuriated Stefanski and prompted a meeting on January 14, 2008, during which Stefanski told Premo she wanted to be rid of Varlesi, and Varlesi requested to be reassigned. Premo refused. The placement continued.

Two weeks later, on January 27, 2008, there was another meeting, this one at Varlesi's request, attended by Varlesi, Stefanski, Premo, and Najor-Durack (Premo's boss, the Director of Field Education). During this meeting, Varlesi directly accused Stefanski of pregnancy discrimination. Stefanski denied any discrimination but said she had told Varlesi repeatedly to stop "rubbing her belly" and to wear looser clothing, and said that the men at the facility were being "turned on by her pregnancy." Neither Premo nor Najor-Durack considered any of that discriminatory. They considered it reasonable under the circumstances and told Varlesi to wear

looser clothing.[3]  They also told Varlesi that she could or should drop out of the program because of her pregnancy.

The January 27th meeting did not resolve or improve the situation.  Stefanski continued to hound Varlesi, who complained to the WSU Office of Equal Opportunity, the WSU Ombudsman, and Najor-Durack.  Varlesi also hired an attorney.  Premo was angry at Varlesi for going over her head and scolded her about it.  But Premo never criticized Varlesi's performance or warned her that she was failing the placement.  In fact, when Varlesi sent Premo an email that she thought things were improving, Premo responded (in her only email response to Varlesi's many emails), on February 2, 2008, with: "You have no idea how much that pleases me.  I knew I was backing a winner."  R. 196-1.  Stefanski was still complaining to Premo, but neither ever put anything in writing.

But the situation had not actually improved, and Varlesi requested yet another meeting, which occurred on March 17, 2008, and comprised Varlesi, Stefanski, Premo, and Gary Gillow (Stefanski's boss).  Stefanski again complained about Varlesi's rubbing her belly, wearing tight clothing, and stimulating the men with her pregnancy; Premo again supported Stefanski.  When Varlesi again raised the pregnancy discrimination, and her complaints about it, Premo scolded

---

[3] Stefanski reenacted this "belly rubbing" during her trial testimony, R. 176 at 11-12, and while the written transcript leaves much to the imagination, it does not appear from the context that this rubbing was sexual or provocative.  In fact, Stefanski at one point testified that she thought the belly rubbing was due to discomfort, indicative of a medical problem with Varlesi or the baby.  But she nonetheless insisted that it could have been sexually suggestive, R. 176 at 69, and Premo testified that Stefanski's problem with the belly rubbing was that it was sexually "stimulating" the men, R. 175 at 18.  Apparently, only Stefanski ever saw it; Premo denied ever seeing any belly rubbing and Najor-Durack was only present for the one meeting, at which there was no belly rubbing.  Stefanski's boss at the Salvation Army, Gary Gillow, denied ever seeing belly rubbing.

Apparently, only Stefanski thought that Varlesi's clothing–which was maternity clothing–was too tight.  Stefanski testified that Varlesi wore slacks and sweaters (one that wrapped around like a robe) and never showed too much skin.  For her part, Premo testified that she never saw Varlesi wearing clothing that was too tight, but simply relied on Stefanski's statements.  Nor did Gary Gillow ever see Varlesi wearing inappropriate clothing.

Finally, the accusation that Varlesi's pregnancy was sexually stimulating the men was not thoroughly developed or explained.  Apparently, Stefanski and Premo (and perhaps Najor-Durack) harbored a belief that pregnancy itself is sexually arousing to all or certain men, though at trial the defendants offered no expert testimony to substantiate such an opinion nor did any of the men testify to actually having been "turned on" or aroused.

her again and instructed her that she was not to talk to Najor-Durack or others about pregnancy discrimination. But no one criticized Varlesi's work quality and, oddly, they even discussed where she wanted to work when she completed her degree. When Varlesi worried about Stefanski's malevolence, Premo assured her that she (Varlesi) was "doing great," that Stefanski had no authority to fail her, and in fact, Stefanski had never given anyone a failing evaluation. Nonetheless, Stefanski continued to hound Varlesi about her belly, her clothing, and her pregnancy, and to threaten a failing evaluation.

On April 15, 2008, Stefanski gave Varlesi a failing evaluation. Moreover, as the district court noted, "WSU admit[ted] that Stefanski's evaluation of [Varlesi] was the worst evaluation any WSU social worker student ha[d] ever received." R. 81 at 9 n.4.[4] Prior to and during the eventual trial, Varlesi's attorney established that this evaluation was procedurally deficient and much of it was unsubstantiated, biased, and substantively untrue. At the time of the evaluation, Varlesi had complained to Premo, Najor-Durack, and others that it was untrue, unfair, and based on discrimination, but her complaints fell on deaf ears. She emailed, called, and wrote a lengthy point-by-point rebuttal for Premo, who ignored her and the rebuttal. On April 29, 2008, Premo gave Varlesi a failing grade in the placement, thus preventing her from obtaining the degree from the social work program.

That same day, Varlesi filed a formal discrimination charge with WSU, which WSU rejected on the basis that the School of Social Work had already investigated and dismissed it. At trial, however, Dean Vroom confirmed that there had been no such investigation. Meanwhile,

---

Regardless, this peculiar accusation, in the context of this lawsuit, appears to be an accusation against pregnant women in general (not Varlesi in particular) and is plainly discriminatory.

[4] Recall that Varlesi wasn't a poor student; she wasn't even an average student; she was an excellent student who had received top grades in her coursework and top evaluations in her first two placements and even a job offer. None of the men in recovery at the Salvation Army ever complained about her and even Gary Gillow (Stefanski's boss) had a favorable opinion of her. Given the extremity of the review, in light of these other circumstances, its legitimacy was immediately suspicious. And it was proven illegitimate via other evidence.

Najor-Durack provided information to Vroom to oppose Varlesi's grade appeal and, relying on that information, Vroom denied the appeal and denied Varlesi's request for readmission to the program. Eventually, at trial, Varlesi's counsel established that Najor-Durack had skewed or fabricated the information against Varlesi, that Vroom had not followed the School's procedures, and that the approach and the harsh result were unique in the history of the program.

Varlesi brought this action in federal court, claiming pregnancy discrimination and retaliation in violation of Title IX and Michigan's ELCRA, among other things. She named the four defendants already discussed herein as well as Stefanski, the Salvation Army, and three WSU panel members who had denied her reinstatement. The parties filed numerous motions with the district court and have appealed the court's decisions as to several of those motions.

During discovery, the defendants sought an independent medical examination (IME) of Varlesi, in order to challenge Varlesi's claim of damages based on emotional harm. The court denied the motion, explaining that Varlesi was not invoking an expert or asserting any medical harm, she was just claiming "garden variety" emotional harm resulting from the ordeal. This is typical of almost every tort case, and every tort case does not necessitate an IME. Here, the court determined that an IME was not clearly necessary at that still-early stage of discovery, denied it without prejudice, and specifically allowed that the defendants could refile the motion, if no later than 90 days before trial. R. 53 at 6; PgID 558. The defendants never refiled the motion.

The defendants moved for summary judgment. The court granted summary judgment to the Salvation Army upon finding that it is not an educational institution subject to Title IX or Michigan's ELCRA counterpart, R. 81 at 15; nor was the Salvation Army subject to ELCRA as either Varlesi's employer, R.81 at 23, or a place of public accommodation, R. 81 at 27. The court granted summary judgment to Stefanski on the same basis, among others. R. 81 at 29. The

court also granted summary judgment on Varlesi's other claims against the WSU defendants (i.e., marital status discrimination, R. 81 at 39; sexual harassment, R. 81 at 48; and due process, via qualified immunity, R. 81 at 53, which eliminated the three reviewing WSU panel members). But, on Varlesi's claims of pregnancy discrimination and retaliation, the court denied summary judgment, finding that she had made a *prima facie* case and identified evidence for a jury determination as to whether the defendants' explanation (inadequate performance) was pretext:

> [Varlesi] easily creates a fact issue on the question of whether the WSU Defendants' proffered reason—namely, performance issues—was the true reason for the failing grade, in light of Premo's statement to [Varlesi] a mere two weeks before Stefanski issued her review of [Varlesi][,] that [Varlesi] was 'doing great.' Premo Dep. at 353. The WSU Defendants are hard pressed to rely on performance deficiencies when [Varlesi]'s ultimate evaluator—Premo—told [Varlesi] as the semester was nearing an end that she was 'doing great.' Nothing catastrophic happened between the time of that statement and the issuance of her final grade.

R. 81 at 38-39; see also R. 81 at 45. Thus, the two claims proceeding to trial were pregnancy discrimination and retaliation, against Premo, Najor-Durack, Vroom, and WSU.

The defendants moved in limine to exclude certain evidence from trial, including Varlesi's testimony about her emotional damages. The court granted that motion in part; allowing Varlesi to testify but disallowing any expert statement or hearsay. R. 118 at 5. The defendants sought to exclude certain other evidence as irrelevant, including: (1) discriminatory statements by Salvation Army employees, (2) violations of the Field Education Manual, and (3) that a WSU employee told Varlesi to omit accusations of discrimination from her application for reinstatement. The court found this evidence relevant and denied the motion. Meanwhile, Varlesi moved to exclude evidence of her 2002 hospitalization and the termination of her marital engagement in 2007. The court found this evidence relevant to Varlesi's claims of emotional distress, but nonetheless excluded the evidence as too prejudicial, unless Varlesi "open[ed] the door in her testimony about how she ha[d] been damaged emotionally." R. 118 at 10.

Following a 13-day trial, the jury ruled for Varlesi, finding the defendants liable and awarding $848,690 in damages ($148,690 economic; $200,000 future; and $500,000 non-economic). The district court entered judgment according to that verdict.

The defendants moved for judgment as a matter of law, a new trial, and a remittitur of the damages award, claiming that (1) the verdict was contrary to the evidence, (2) the damages were excessive, (3) the trial was unfair, (4) the court erred in certain evidentiary rulings, (5) the jury instructions were improper, and (6) Varlesi's counsel committed some unarticulated misconduct. R. 169 at 2. The district court denied the motion in its entirety. The defendants appeal.

## II.

Because we review most of these claims for abuse of discretion and because most of the defendants' arguments here are that the district court abused its discretion by misconstruing facts or evidence, we begin with this standard of review. "The district court abuses its discretion when it applies an erroneous legal standard, misapplies the proper legal standard, or *relies on clearly erroneous facts*." *E.E.O.C. v. Peoplemark, Inc.*, 732 F.3d 584, 590 (6th Cir. 2013) (emphasis added). Otherwise, an "[a]buse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Id*. (quotation marks omitted). And "the trial judge's exercise of discretion is entitled to substantial deference, especially when the rationale for the [decision] was predominantly fact-driven." *Id*. (editorial and quotation marks omitted).

### A.

The defendants claim that the district court abused its discretion by excluding certain evidence about Varlesi's 2002 hospitalization for mental health issues and the termination of her marital engagement in the summer of 2007. Specifically, the defendants argue that Varlesi "opened the door" to admission of this evidence of possible other causes of her emotional

distress with her testimony about her ongoing emotional distress. The court found the evidence relevant but much more prejudicial than probative and held that Varlesi did not open the door.

On appeal, the defendants cite *Maday v. Public Libraries*, 480 F.3d 815 (6th Cir. 2007), as support for their proposition that "[e]vidence of alternative sources of emotional distress, such as concurrent psychiatric illnesses or marital problems, *should* be admitted at trial." Apt. Br. at 43 (emphasis added). First, it is a stretch to say that *Maday* stands for any such proposition and there are numerous reasonable arguments that it does not. *See Maday*, 480 F.3d at 821 (holding that the plaintiff had waived any purported social-worker-client-confidentiality privilege by putting her emotional state at issue in the case). But, even accepting the proposition as defendants state it, "should" is not "must," and neither the defendants nor *Maday* suggest that Federal Rule of Evidence 403 does not apply or that the court misapplied Rule 403 when it balanced the relevance against the prejudice.

Instead, the defendants disagree with the court's weighing of the evidence, contending that when Varlesi testified about her ongoing emotional harm, the evidence of her 2002 mental health and 2007 relationship turmoil "outweigh[ed] any prejudice because it directly rebut[ted] [her] allegations" that she was "harmed only by Defendants." Apt. Br. at 46. Varlesi points out that the court excluded only two specific things: (1) her psychiatric hospitalization in 2002 and (2) the "reason" for the termination of her marital engagement in 2007. The defendants could, and did, raise (and question Varlesi and others about) alternative sources of emotional distress, including: that Varlesi's fiancé and father of her child left her, her mother's significant health issues, the deaths of close family and friends, the birth of her son and her being a single mother, and the rigors of the litigation in this case. That is, the defendants did present significant evidence to rebut any suggestion that Varlesi was "harmed only by Defendants."

On the whole, the court did not rely on any clearly erroneous facts; it relied on the record facts and its decision is entitled to substantial deference. *See Peoplemark*, 732 F.3d at 590. We find no abuse of discretion in this determination.

**B.**

The defendants claim that the district court abused its discretion by withholding until the close of evidence the formal admission into evidence of certain letters, thus preventing the use of the letters during testimony at trial. The defendants argue that these letters show (1) that Varlesi's performance problems predated the discrimination and retaliation and (2) that Premo had supported Varlesi initially even though she knew Varlesi was pregnant and had complained about discrimination. The defendants do not cite any cases to support this claim of error, but cite only Federal Rule of Evidence 901 (authentication of evidence), and that only in passing.

The two letters in question were written by Pamela Mackey, the field instructor at the VA Hospital where Varelsi did her fall 2007 semester placement; were very critical of Varlesi's performance at that placement; and were sent to Premo as attachments to an email. But the letters themselves were undated. Moreover, Mackey testified that she might have written the letters after Premo had already failed Varlesi, and this revelation was exacerbated when Najor-Durack testified that, after failing Varlesi, Najor-Durack had solicited negative information from Mackey about Varlesi to justify the failing. Thus the district court had concerns that the letters were after-the-fact fabrications rather than contemporaneous reports that would have justified Premo's decision at the time, and withheld admission until the defendants produced the dated email correspondence that established when Mackey had actually sent the letters to Premo.

Even assuming these letters were relevant (and that is questionable, given that Premo passed Varlesi in that fall 2007 placement despite these letters and Mackey's opinion should have had no bearing on the grade for the spring 2008 Salvation Army placement), this was

merely an exercise of the court's Federal Rule of Evidence 901 authority. The court did not rely on any clearly erroneous facts; it relied on the accurate record facts and its decision is entitled to substantial deference. *See Peoplemark*, 732 F.3d at 590. On these facts and this record, there was no abuse of discretion in this determination.

## C.

The defendants argue that, by allowing the jury to award future damages, the district court abused its discretion, first because any award of future damages would be too speculative as a matter of law due to Varlesi's young age; and second, because Varlesi did not prove that she had mitigated her damages. Neither of these arguments has merit.

The defendants cite several cases as support for their proposition that Varlesi's young age necessarily rendered any future damages unavailable as a matter of law, but none of those cases actually holds (or even suggests) that her "young age" is determinative. And that is not the law. The law requires that, because future damages (a.k.a. front pay) are "often speculative," the district court must have "flexibility and wide discretion" in crafting such a remedy. *Shore v. Fed. Express Corp.*, 42 F.3d 373, 378 (6th Cir. 1994). And there are certain factors that must guide the award of future damages, including mitigation of damages, "the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, [and] the discount tables to determine the present value of future damages," among others. *Roush v. KFC Nat'l Mgmt. Co.*, 10 F.3d 392, 399 (6th Cir. 1993). Varlesi provided evidence about, and the district court considered, these factors, including her mitigation efforts, her inability to enroll in other graduate programs after her failure at WSU, her job search and the prior job offer, and Bureau of Labor statistics.

As for mitigation, it was defendants' burden to prove that Varlesi did not mitigate, *see Maden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 680 (6th Cir. 2008), and they failed

to persuade the district court or the jury. Given that the record does contain evidence of Varlesi's mitigation efforts, this is yet another argument about the weighing of the evidence.

The court did not rely on any clearly erroneous facts; it relied on the record facts and its decision is entitled to substantial deference. *See Peoplemark*, 732 F.3d at 590. We find no abuse of discretion in this determination.

## D.

The defendants argue that the district court abused its discretion by denying their motion for remittitur because: (1) the amount is so excessive that it shocks the conscience, (2) Varlesi could invest the award and receive interest from that investment in perpetuity, and (3) Varlesi's evidence did not justify the award. The defendants cite several cases, but none is persuasive or even clearly applicable. This is just another disagreement about the weighing of the evidence.

This award does not shock the conscience. Remittitur "should be granted only if the award *clearly* exceeds the amount which, under the evidence in the case, was the maximum that a jury could reasonably find to be compensatory for the plaintiff's loss." *Roush*, 10 F.3d at 397 (emphasis in the original; quotation marks omitted). The evidence here demonstrates that the defendants' discrimination and retaliation deprived Varlesi of the opportunity for employment in her chosen field by denying her a graduate degree and denying her the ability to obtain that degree elsewhere, thus causing actual damages and foreseeable emotional harm. This award does not necessitate remittitur.

The defendants' second argument—that Varlesi could invest the award at 5% interest and receive dividends in perpetuity—is irrelevant and wholly frivolous. How a litigant might spend, save, or invest an award has no bearing on the propriety of that award.

Finally, Varlesi produced evidence that the jury ultimately believed and found informative in its calculation of damages. The defendants disagree with the weight of that

evidence and they had their opportunity to counter it at trial. They failed to do so and their continued disagreement does not mean the court abused its discretion.

The court did not rely on any clearly erroneous facts; it relied on the record facts and its decision is entitled to substantial deference. *See Peoplemark*, 732 F.3d at 590. Again, we find no abuse of discretion.

### E.

The defendants claim that the district court abused its discretion by admitting (1) the School of Social Work Field Manual and the defendants' failure to abide by it, and (2) certain pregnancy-related derogatory statements made to Varlesi by Salvation Army employees. Just to be clear, the district court admitted the former as evidence that the defendants' post-hoc explanation was simply pretext and the latter as proof that the defendants were fully aware of the discrimination.

The defendants argue that the evidence was misleading, irrelevant, and prejudicial; that the potential for prejudice and confusion outweighed the probative value. But the defendants offer no reason (or even argument) that the court was obligated or required to exclude this evidence. This is, at best, another disagreement with the district court's weighing of the evidence. The court did not rely on any clearly erroneous facts; it relied on the record facts and its decision is entitled to substantial deference. *See Peoplemark*, 732 F.3d at 590. The court did not abuse its discretion in this evidentiary determination.

### F.

The defendants claim the district court abused its discretion by refusing to give certain requested jury instructions because they were correct statements of the law. To be sure, one factor in a court's determination of the propriety of a requested jury instruction is that it is a correct statement of the law. *See Williams v. Eau Claire Pub. Sch.*, 397 F.3d 441, 445 (6th Cir.

2005) (citation omitted). But, even when that is so, it is nonetheless improper for a court "to instruct the jury on an issue when there has been insufficient evidence presented to support a jury finding on that issue." *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 322 (6th Cir. 2007).

The first requested instruction was the same-actor-inference instruction; i.e., the same actor (Premo) passed Varlesi in the fall 2007 semester but failed her in spring 2008, despite Varlesi's pregnancy and discrimination claims in both terms, so the jury could infer that after first giving Varlesi a passing grade, Premo would not have discriminated or retaliated against her four months later. But Premo's attitude and the surrounding circumstances changed markedly during this period. When Premo passed Varlesi in her VA Hospital placement (fall 2007 semester), Premo was unsure of exactly what had occurred there, or whom to believe. And while Varlesi had raised accusations of pregnancy discrimination, she had not filed any formal complaints and she certainly had not directly disobeyed Premo's order that she not complain to Najor-Durack. By the end of spring 2008, however, after four intense months of pregnancy discrimination, accusations, meetings, discrimination complaints, and threats, Premo was—by her own admission—fed up with Varlesi. Simply put, the evidence did not support the giving of this instruction.

The second requested instruction was the presumption-of-regularity instruction; i.e., the jury could presume that the defendants had regularly performed their duties. But the evidence was to the contrary. The defendants did not perform their duties according to the written policies contained in the School of Social Work Field Manual. In clear violation of, or disregard for, the policies, Premo conducted her duties as "faculty advisor" to Varlesi without any plan, structure, or consistency; kept no notes or records; did almost nothing to alleviate a very problematic situation involving Varlesi's pregnancy, instead condoning and joining the discrimination; ordered Varlesi—in direct contravention of the Manual and the law—to stop raising

discrimination complaints to Premo's superiors; and then, by Premo's own admission, failed Varlesi in retaliation for making those complaints. Najor-Durack joined in the pregnancy discrimination (ordering Varlesi to wear looser maternity clothing and advising her to drop out of the program because she was pregnant), and then fabricated evidence to support the failing grade and prevent a fair grade appeal or reinstatement review. Vroom ignored the Manual and rubber-stamped the failing grade without any investigation; she also agreed with the dismissal of the discrimination complaint despite knowing that no actual investigation or inquiry had ever been undertaken. There is no "regularity" in any of that.

The third requested instruction was the business-judgment instruction, i.e., WSU had discretion over its business judgments, even if they were wrong. But the decision to discriminate and retaliate against a student, and then cover it up, is not a business judgment.

As the district court found, the evidence did not support these requested instructions. The court did not rely on any clearly erroneous facts; it relied on the record facts and its decision is entitled to substantial deference. *See Peoplemark*, 732 F.3d at 590. We find no abuse of discretion in these determinations.

## G.

The defendants argue that the district court used the wrong standard of causation for the retaliation claim, based on *University of Texas Southwest Medical Center v. Nassar*, 133 S. Ct. 2517, 2526, 2533 (2013), which held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation." That is, the defendants argue that Varlesi was required to prove that Premo gave her the failing grade "because of" her complaining to Premo's superiors about the discrimination; it is not enough that the complaining (i.e., protected activity) was merely a "motivating" or "substantial" factor influencing the failing grade (i.e., retaliatory action).

The defendants' contend that the court instructed the jury that Varlesi had only to prove that the protected activity was a "significant factor" motivating Premo's retaliatory act. *See* Apt. Br. at 58-59. Two of the court's actual instructions are pertinent here:

> Federal and state law also prohibit an educational institution from retaliating against a student *because* the student has engaged in a protected activity.

R. 186 at 185, lines 7-10; PgID 8848 (emphasis added).

> To establish a causal connection [for retaliation], Plaintiff must demonstrate that her participation in a protected activity was a *significant factor* in Defendants' adverse decisions.

R. 186 at 187, lines 21-24; PgID 8850 (emphasis added).

But *Nassar*, a Title VII case, went to some lengths to differentiate Title VII from Title IX with regard to prohibitions on retaliation. *See Nassar*, 133 S. Ct. at 2530-31. Moreover, this trial predated the Court's issuance of *Nassar* by about five months, so the difference between "because" and "significant factor" was not meaningful at the time and, in fact, "significant factor" was actually the law. And the jury verdict form was framed as an express question that used "because" and not "significant factor":

> Question 2
>
> Do you find that any one of, or more than one of the Defendants . . . retaliated against Plaintiff by awarding her a grade of 'unsatisfactory', dismissing her from the Wayne State University and/or failing to reinstate her *because* she complained about pregnancy discrimination?

R. 128 (emphasis added). The jury voted yes.

The Fourth Circuit considered a similar situation and rejected the employer's argument that *Nassar*'s change in the law warranted a new trial, explaining:

> [D]espite the improper instructions, it is not clear that the jury actually determined [the defendant]'s liability under the incorrect standard. The jury's verdict sheet may constitute 'evidence to the contrary' of our typical assumption that the jury followed the district court's instruction on this claim. On its verdict sheet, the jury found that [the plaintiff] had proven 'he was terminated from his employment by the defendant *because of* his opposition to activity made unlawful under Title VII.' Under *Nassar*, the use of 'because of' indicates the existence of a but-for

> causal relationship. . . . The jury's finding that there was no lawful reason for [the plaintiff]'s termination indicates that it could have concluded retaliation was a but-for cause of the adverse employment action.

*E.E.O.C v. A.C. Widenhouse, Inc.*, 576 F. App'x 227, 231-32 (4th Cir. 2014) (editorial marks, citations, and certain quotation marks omitted). Notably, like *Nassar*, *Widenhouse* was a Title VII case, whereas the present case is a Title IX discrimination and retaliation case.

But the basic premise holds: the jury here found expressly that the defendants retaliated against Varlesi *because* she complained, "because" means "but-for" under *Nassar*, and the defendants have not shown that the outcome would have been different had the court consistently used "because" instead of "significant factor" in its oral instructions. Therefore, even assuming that *Nassar* applies to Title IX claims, we conclude as the Fourth Circuit did in *Widenhouse* that the defendants cannot demonstrate prejudice from this perceived error and it is consequently not reversible.

## H.

The defendants claim that the district court erred by refusing a directed verdict based on insufficient evidence. Fed. R. Civ. P. 50 (providing that the court may grant a judgment as a matter of law if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party"). In reviewing the district court's order, we must view the evidence in the light most favorable to the party against whom the motion is made, giving that party the benefit of all reasonable inferences. The motion should be granted, and the district court reversed, only if reasonable minds could not come to a conclusion other than one favoring the movant. *See K & T Enters., Inc., v. Zurich Ins. Co.*, 97 F.3d 171, 175-76 (6th Cir. 1996). Simply put, Varlesi produced evidence that Premo joined or enabled Stefanski's discrimination against her due to her pregnancy and also retaliated against her (via a failing grade in her placement and failing her from the program) for complaining about that discrimination; Najor-Durack joined in the

pregnancy discrimination (ordering Varlesi to wear looser maternity clothing and advising her to drop out because she was pregnant), then solicited evidence to support Premo's failing grade and prevent a fair grade appeal or reinstatement review; and Vroom ignored the Manual, approved the failing grade without investigation, and agreed with the dismissal of the discrimination complaint despite knowing that no actual investigation or inquiry had ever been undertaken. A reasonable jury could point to this evidence as a basis for its verdict.

## I.

The defendants argue that the district court should have granted them summary judgment, for the reasons "discussed in Defendants' Motion for Summary Judgment." Apt. Br. at 60. But "a losing party may not appeal an order denying summary judgment after a full trial on the merits." *Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 549-50 (6th Cir. 2015).

This claim is frivolous.

## III.

For all of the foregoing reasons, we AFFIRM the judgment of the district court.

# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: March 07, 2016

Ms. Deborah L. Gordon

Mr. Paul D. Hudson

Ms. Carol Laughbaum

Ms. Megan P. Norris

Mr. Muhammad Misbah Shahid

>    Re: Case No. 14-1862, *Tina Varlesi v. Wayne State University, et al*
>         Originating Case No. : 2:10-cv-14793

Dear Counsel:

   The Court issued the enclosed Opinion today in this case.

>                        Sincerely yours,
>
>                        s/Leon T. Korotko
>                        Case Manager
>                        Direct Dial No. 513-564-7014

cc:  Mr. David J. Weaver

Enclosure

Mandate to issue